IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                             No. CR 04-451 JB

RYAN WILLIAMS,

  Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss and Request for an Evidentiary Hearing, filed July 16, 2004 (Doc. 34); and (ii) the Defendant's Secondary Motion to Dismiss, filed August 13, 2004 (Doc. 43). The primary issue is whether the United States has sufficient evidence to prove that the alleged crime occurred in Indian country. The Court will grant the Defendant Ryan Williams' request for an evidentiary motion, but because the United States has shown substantial evidence to prove this element of the crime, the Court will otherwise deny the motion to dismiss.

## FACTUAL BACKGROUND

Williams is an enrolled member of the Navajo Nation, a federally recognized Indian tribe. The United States alleges that Williams committed Aggravated Sexual Abuse and Kidnapping. The alleged victim of the Aggravated Sexual Abuse and Kidnapping identified the situs of the crime by explaining which exit was taken, the roads traveled, a house she saw on the evening of the crime, and that it was near a hill.

Law enforcement agents from the Navajo Department of Law Enforcement and the Federal

Bureau of Investigation escorted the alleged victim to the scene of the crime by following her instructions and took Global Positioning System ("GPS") coordinates from that spot. The Criminal Investigator for the Window Rock Criminal Investigations, Alvernon Tsosie, then submitted those GPS coordinates to the Navajo Land Department and requested a Land Status Verification. See Letter from Alvernon Tsosie to Alfred Dehiya (dated March 5, 2004). In a letter dated March 15, 2004, Alfred Dehiya, Department Manager of the Navajo Land Department submitted his findings to Tsosie. See Letter from Alfred Dehiya to Alvernon Tsosie (dated March 15, 2004)(with maps).

Dehiya's findings indicate that the location of the alleged Aggravated Sexual Abuse and Kidnapping took place on Individual Indian Allotment Land, #024204. See id. Specifically, the coordinates were plotted in the NE/4NW/4 of Section 13, Township 13 North, Range 21 West, New Mexico Principal Meridian, within the Vicinity of Manuelito Chapter of the Navajo Nation, Bureau of Indian Affairs, Land Management District 16, Eastern Navajo Agency, Indian Country, McKinley County, State of New Mexico. See id. Dehiya's letter further states: "The United States of America holds title to the said land in Trust for the benefit of the Individual Allottee." Id.

The only indication that the site of the alleged acts occurred where the Court has jurisdiction are GPS coordinates. But experienced criminal investigators, the victim of Williams' alleged criminal acts, and the Navajo Land Department have determined that the situs of the crime occurred on Individual Indian Allotment Land. And the alleged criminal acts occurred on Individual Indian Allotment land, not a dependent Indian community.

Williams offers no evidence that the coordinates taken by law enforcement and submitted to the land office are incorrect. Nor does he assert that the situs of the alleged crime is not Individual Indian Allotment land. Rather, he asserts only that the situs of the alleged acts was in what is

commonly called a "checkerboard" area, a section containing mixed Indian lands and lands dedicated to non-Indian use. At the evidentiary hearing, however, the United States offered evidence that the nearest land not considered Indian Country is approximately two miles from the situs of the alleged crime. See Transcript of Hearing, 38:22 - 39:17(August 31, 2004)(Witness Alfred Dehiya, Department Manager of the Navajo Land Department)(hereinafter "Tr.").[1]

Williams represents that he has made diligent attempts to discover the site's precise location, but to no avail. Williams took the same law enforcement officials to the general vicinity of the crime, but he could not pinpoint the exact location. See FBI Report (dated February 16, 2004). The area where Williams took the law enforcement investigators is consistent with the area where the alleged victim told law enforcement the crime occurred.

Williams contends that the United States has not revealed the source of the coordinates to Williams. The United States responds that it has previously provided to Williams all the reports, letters, and other discovery with regard to these matters.

## PROCEDURAL BACKGROUND

The United States presumably prepared the Indictment before the Grand Jury issued it. The indictment in this matter refers to 18 U.S.C. § 1153 as grounds for the Court's jurisdiction. One of the elements of the offense charged includes that the alleged crime occurred in Indian Country as defined in 18 U.S.C. § 1153.

The United States has been on notice that Williams was preparing to defend the charges against him based on, at least in part, the status of the site of the alleged incident being classified

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

under 18 U.S.C. § 1153 since February 18, 2004, the date of Williams' detention and preliminary hearings.  Williams moves the Court, pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. § 1151, Alaska v. Native Village of Venetie Tribal Gov't, 522 U.S. 520, 527-31 (1998), and rule 12(b)(1) of the Federal Rules of Criminal Procedure, for an Order dismissing the indictment filed in this matter.  Williams asks the Court to hold an evidentiary hearing on the issue whether the United States can show to the Court's satisfaction that the site where Williams allegedly performed criminal acts was within Indian Country and then dismiss the indictment filed in this matter.

The United States does not believe an evidentiary hearing is warranted and contends that the Court should deny the motion.  The United States represents that, should the Court require an evidentiary hearing, it anticipates calling Dehiya, pursuant to rule 702 of the Federal Rules of Evidence, to provide expert testimony that the lands where the crimes occurred are Individual Indian Allotment lands.

After the United States filed its response to the first motion, Williams filed his second motion, contending that the United States' current position was a sudden change from its prior position. Williams contends that this matter has been pending for six weeks and that the United States' new position constitutes surprise, in violation of the precepts contained in the Fifth and Fourteenth Amendments to the Constitution.  He contends that he has been substantially prejudiced in that he has focused considerable amounts of his time and energy in defending an element of the charge, and the United States has now changed the nature of the charges against him.  He contends that the harmless error analysis is inapplicable.  See United States v. Prentiss, 273 F.3d 1277, 1278 (10th Cir.

2001).[2]

On August 31, 2004, the Court held an evidentiary hearing. At that hearing, Dana Hernandez, a victim's specialist with the Federal Bureau of Investigation ("FBI"), Stephen Chambers, a FBI special agent, and Dehiya, testified.

At the hearing, Hernandez testified that she accompanied the alleged victim to establish the location that the alleged attack occurred.[3] See Tr. at 15:17-19. After the alleged victim recalled the general location, Hernandez and the alleged victim eventually found the area located on a steep hill. See id. at 16:4 - 19:3. Hernandez marked the site with a large rock. See id. at 19:22-24. Hernandez also took Global Positioning Unit ("GPS") coordinates of the site, see id. at 23:21-22, which she provided to Chambers, the case agent in charge of the investigation, see id. at 26:10-24.

Chambers testified that he returned to the site with Hernandez. See id. While at the site, Chambers took an additional GPS reading, which matched the first reading. See id. Chambers submitted the GPS coordinates to the Navajo Nation land department. See Tr. at 28:15-24. In response, Dehiya described the area in which the site is located as an individual Indian allotment. See id. Dehiya testified about the land status verification process that the Navajo Land Department

---

[2] In United States v. Prentiss, the United States Court of Appeals for the Tenth Circuit considered whether the failure to allege the Indian status of the defendant and the victim in the Indictment was harmless error. This decision came on remand by United States v. Prentiss, 256 F.3d 971, 981 (10th Cir. 2001), in which the Tenth Circuit en banc held that failing to allege the Indian status of the defendant and the victim, although essential elements of the crime of under 18 U.S.C. § 81 and § 1152, was subject to harmless error review. See United States v. Prentiss, 256 F.3d at 981. The United States v. Prentiss decisions, however, discuss the application of the harmless error standard during appellate review. Williams' reliance on such precedent in an attempt to distinguish the case at hand is, therefore, misplaced.

[3] Because the alleged victim did not feel comfortable traveling with Chambers, a male agent, in his car to locate the situs of the alleged crime, Hernandez, a female agent, escorted the alleged victim. See Tr. at 15:5-16.

utilized.

Williams did not offer any independent evidence showing the site was not located in Indian Country, nor did he point to evidence to rebut the accuracy of the GPS coordinates or the credibility of the government's witnesses.

## LAW REGARDING INDICTMENTS

Rule 7 of the Federal Rules of Criminal Procedure governs indictments and requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged . . . ."  Fed. R. Crim. Proc. 7(c)(1).

## LAW REGARDING OFFENSES COMMITTED WITHIN INDIAN COUNTRY

In United States v. Pelican, 232 U.S. 442 (1914), the Supreme Court of the United States held that Individual Indian Allotments, parcels of land held in trust by the United States, were Indian country. See id. at 449. The Supreme Court went on to explain that, after the reservations diminishment, the allotments continued to be Indian country, because they were set aside for Indian use and the United States retained control of the land. See id.; Mustang Prod. Co. v. Harrison, 94 F.3d 1382, 1385 (10th Cir. 1996)(citing Okla. Tax Comm'n v. Sac & Fox Nation, 508 U.S. 114, 121 (1993)).

In Alaska v. Native Village of Venetie Tribal Gov't, the Supreme Court addressed the issue whether land owned in fee simple by a Native Village pursuant to the Alaska Native Claims Settlement Act ("ANCSA") is "Indian country." See id.  The Supreme Court explained that Congress passed ANCSA to "end the sort of federal supervision over Indian affairs that had previously marked federal Indian policy." 522 U.S. at 523-24.  ANCSA revoked the various reservations set aside for Indian use. See id. at 524.

Under the holding in Alaska v. Native Village of Venetie Tribal Gov't, the United States must show that the situs of the alleged acts, when not on Indian Reservations or Indian Allotments, "must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence." Id. at 527. The issue in Alaska v. Native Village of Venetie Tribal Gov't, however, was not Individual Indian Allotments, but a dependent Indian community. The Court found that lands under ANSCA are neither validly set aside for use by Indians nor under the United States' control, and therefore not "Indian country" under 18 U.S.C. 1151(b).

Section 1151(c) governs Individual Indian allotments. Individual Indian Allotment Land is considered Indian country under 18 U.S.C. § 1151(c).

## ANALYSIS

It will be necessary for the jury to determine the precise location of the situs of the alleged acts that led to the criminal charges against Williams. The United States has presented sufficient evidence to show the Court that it can prove the elements of the offense charged. The Court will allow the United States to present this evidence to the jury for it to determine whether it has proved this element beyond a reasonable doubt.

The United States alleges that the Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1151, based on the United States' belief that the situs was within the exterior boundaries of the Navajo Indian Reservation. The United States and the Court have jurisdiction over matters occurring in Indian country. Under United States v. Pelican, Individual Indian Allotments, such as the land in question here, are Indian country.

Alaska v. Native Village of Venetie Tribal Gov't is inapplicable. Individual Indian Allotments and dependent Indian communities are different forms of land under 18 U.S.C. § 1151. The situs of

the crime in this case is an Individual Indian Allotment, and the analysis under <u>Alaska v. Native Village of Venetie Tribal Gov't</u> has no application. Federal jurisdiction thus exists under 18 U.S.C. § 1151(c).

That Williams cannot remember exactly where these alleged acts occurred may not affect the Court's jurisdiction. It is for the jury to decide whether the alleged crime occurred on Indian Country. The United States does, however, have enough evidence to get to the jury.

**IT IS ORDERED** that the Defendant's Motion to Dismiss, Request for an Evidentiary hearing, and Second Motion to Dismiss is granted in part and denied in part. The Request for an Evidentiary Hearing is granted. The Motion to Dismiss is denied. The Defendant's Second Motion to Dismiss is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
Kyle T. Nayback
  Special Assistant United States Attorney
Albuquerque, New Mexico

　　*Attorneys for the Plaintiff*

Charles E. Knoblauch
Albuquerque, New Mexico

　　*Attorney for the Defendant*